IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSHUA DANIEL MILLS,

     Plaintiff,                   No. 2:11-cv-1852 JFM (PC)

    vs.

GEORGE MALIM, et al.,

     Defendants.         ORDER

_____/

        Plaintiff is a state prisoner proceeding through counsel with a civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding before a United States Magistrate Judge with the consent of the parties pursuant to 28 U.S.C. § 636(c). <u>See</u> Doc. Nos. 12, 18, 20, 87. It is proceeding on four of five claims raised in plaintiff's original complaint, filed July 14, 2011 (hereafter "Complaint").[1] The events at bar arose from a period when plaintiff was incarcerated at the Placer County Jail. Plaintiff's first claim is that on July 14, 2009 defendant Correctional Officers White and Williams subjected plaintiff to excessive force. Plaintiff's second claim is that defendants Malim, Vladesov, Hendricks, and Duncan acted with deliberate indifference to

---

[1] In a motion for additional discovery pursuant to Fed. R. Civ. P. 56(d) filed June 24, 2012, plaintiff abandoned his fourth claim concerning alleged denial of contact visitation with his criminal defense attorney. The Rule 56(d) motion was denied by order filed October 1, 2012.

1

plaintiff's serious medical needs by refusing to allow him to wear prescription dark sunglasses to alleviate the migraine headaches from which plaintiff suffered due to the fluorescent lights in the jail. Plaintiff's third claim is that defendant Deputy Glenwinkel subjected plaintiff to a sexually inappropriate pat down search. Plaintiff's fifth claim is that jail staff improperly monitored his confidential communications with his criminal defense attorney.

On May 7, 2012, defendants Glenwinkel, Malim, White, and Williams filed a motion for summary judgment on all four of the remaining claims.[2] On May 18, 2012, defendants Duncan and Hendricks moved for summary judgment on plaintiff's Eighth Amendment claim arising from the alleged inadequate medical care. On December 7, 2012, defendant Vladesov joined in the May 7, 2012 motion for summary judgment of defendants Glenwinkel, Malim, White and Williams. On December 31, 2012, plaintiff filed an opposition to both motions. On January 7, 2013, defendants Duncan and Hendricks filed a reply brief. On January 14, 2013, defendants Glenwinkel, Malim, White, Williams, and Vladesov filed a reply brief and objections to some of the evidence tendered by plaintiff in opposition to their motion for summary judgment.[3]

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
>
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and

---

[2] Defendant Malim also sought summary judgment on the claim arising from the alleged denial of contact visits, but, as noted above, plaintiff has abandoned that claim.

[3] Defendants object to several specific statements in the declarations of plaintiff and Julia M. Young filed in opposition to defendants' motion for summary judgment. The court has not relied on any of the statements to which defendants object in making this order.

> admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## ANALYSIS

I. Excessive Force

Defendants White and Williams seeks summary judgment on plaintiff's claim that they subjected him to excessive force in violation of the Eighth Amendment on the ground that the use of force was in good faith to restore discipline. Plaintiff disputes their contention.

/////

/////

A. Facts

On July 14, 2009, plaintiff was out of his cell in the Placer County Jail on an upper tier. Declaration of Officer Butcher filed May 7, 2012 (Butcher Decl.), at ¶ 5; Declaration of Joshua Daniel Mills in Support of Opposition to Motion for Summary Judgment filed December 31, 2013 (Mills Decl.), at ¶ 9. Officer Butcher told plaintiff not to be on the top tier. Butcher Decl. at ¶ 6; Mills Decl. at ¶ 9.

Defendants contend that thereafter the following occurred. Plaintiff responded to Officer Butcher's order by saying, "Fuck that! This is my dayroom time, and I'll do whatever the fuck I want!" Butcher Decl. at ¶ 7. Officer Butcher told plaintiff his dayroom was over and to lock down. Id. at ¶ 8. Plaintiff responded "I ain't fucking locking down! I live here, and I'll do what the fuck I want during my dayroom time! If you don't want me up here, come in here and handle it yourself!" Id. Officer Butcher took this as a threat and radioed for assistance from other officers. Id. at ¶¶ 9-10. Defendants Williams and White and two other officers responded. Id. at ¶ 10. Plaintiff, who was standing in a doorway that leads into a dayroom, refused to comply with orders to sit down, and he "used profane language combined with aggressive posturing toward the responding officers." Id. at ¶ 11. Plaintiff "had a history of assaulting jail staff and was classified as a two officer move." Id. The door into the dayroom was opened and officers intended to use pepper spray to get plaintiff to comply. Id. at ¶ 12. Plaintiff took a step away from the door and said, "Yeah, spray me! C'mon!" Id. Plaintiff "backpedaled into the dayroom" and the four officers rushed him. Id. at ¶ 13. Plaintiff attempted to hit one of the officers and defendant White "delivered distraction strikes toward [plaintiff's] torso." Id. at ¶ 14. Plaintiff was taken to the ground and refused to submit to handcuffs. Id. Defendant Williams struck plaintiff twice on the left leg. Id. Plaintiff was then placed in handcuffs and taken from the dayroom. Id. Neither defendant White nor defendant Williams hit or struck plaintiff after he stopped resisting. Id.

/////

1  Plaintiff reports a different version of events.  He avers that after Officer Butcher
2 told him plaintiff could not be on the top tier plaintiff "went to the door downstairs to wait for
3 the sergeant."  Mills Decl. at ¶ 9.  While he was waiting, "the door popped and [he] was charged
4 by four correctional officers."  Id.  "Defendant White struck [plaintiff] in the face repeatedly.
5 Defendant Williams struck [plaintiff] with the baton while I was completely restrained on the
6 floor."  Id.  Plaintiff was wearing shower shoes and never performed "any 'martial art' moves
7 when the officers entered since [he] was immediately restrained once the door popped."  Id. at ¶
8 10.  Plaintiff "never once attempted to hit any of the officers prior to being assaulted by them."
9 Id.  No criminal charges were filed against plaintiff as a result of this incident.  Declaration of
10 Julia M. Young in Support of Opposition to Motion for Summary Judgment, filed December 31,
11 2012 (Young Decl.), at ¶ 15.  On August 10, 2009, Ms. Young filed a complaint with the Placer
12 County Sheriff's Department concerning the July 14, 2009 incident.  Id. at ¶ 14.  Plaintiff was
13 transferred to California State Prison-Sacramento (CSP-Sacramento) on August 12, 2009.  Id.
14  B.  Legal Standards
15  The use of excessive force by a prison official violates the Eighth Amendment.
16 Hudson v. McMillian, 503 U.S. 1 (1992).  Determining whether there has been an Eighth
17 Amendment violation turns upon "'whether force was applied in a good faith effort to maintain
18 or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"  See
19 id. at 6 (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)).
20  To determine whether the use of force violates the Eighth Amendment, the court
21 should consider the "extent of injury . . ., the need for application of force, the relationship
22 between that need and the amount of force used, the threat 'reasonably perceived by the
23 responsible officials,' and 'any efforts made to temper the severity of a forceful response.'"
24 Hudson, 503 U.S. at 7 (quoting Whitley, 475 U.S. at 321); see also LeMaire v. Maass, 12 F.3d at
25 1454 (considering need for application of measure or sanction complained of, relationship
26 between need and measure or sanction used, extent of any injury inflicted and extent of

6

surrounding threat to safety of staff and inmates); Spain v. Procunier, 600 F.2d 189, 195 (9th Cir.1979) (guards may use force only in proportion to need in each situation).

    C. Application

The parties present two different versions of events that followed Officer Butcher's direction to plaintiff to leave the upper tier. Each has attested to their version of events under penalty of perjury. Their disputes over what happened and why give rise to material issues of fact about whether any force was needed and, in turn, whether the force used by defendants White and Williams was applied in good faith to restore order or, instead, maliciously and sadistically to cause plaintiff harm. These disputes preclude summary judgment for defendant White and defendant Williams. Defendants' motion for summary judgment will be denied as to plaintiff's excessive force claim.

II. Deliberate Indifference to Serious Medical Needs

Plaintiff's second claim is that defendants Malim, Vladesov, Hendricks, and Duncan acted with deliberate indifference to plaintiff's serious medical needs by refusing to allow him to wear prescription dark sunglasses purchased by his attorney to alleviate the migraine headaches from which plaintiff suffered due to the fluorescent lights in the jail. Defendant Malim seeks summary judgment on the ground that there is no evidence plaintiff had a serious medical need at the time defendant Malim denied plaintiff's request to wear sunglasses in the jail, and no evidence that defendant Malim was deliberately indifferent to any medical need plaintiff had. Defendant Vladesov has joined in this motion. Defendants Hendricks and Duncan seek summary judgment on the ground that there is no evidence that either was deliberately indifferent to plaintiff.

/////
/////
/////
/////

A. Facts[4]

In February 2007, defendant Dr. David Duncan referred plaintiff for a diagnostic brain CT scan due to for complaints of dizziness and blurred vision. Declaration of David Duncan, M.D., filed May 18, 2012 (Duncan Decl.) at ¶ 3(A). The CT showed no abnormalities. Id. Defendant Duncan then referred plaintiff to an optometrist for a consultation in May 2007. Id. at ¶ 3(C). The optometrist's report "suggested the use of artificial tears and the findings were consistent with the dizziness of ophthalmologic migraines." Id. at ¶ 3(D). In October 2007, muscle relaxant and pain medication were prescribed for plaintiff due to complaints of severe pain from pressure behind his eyes. Id. at ¶ 3(E). In October 2008, plaintiff reported several migraines and thought they might be related to the lights in the jail. Id. at ¶ 3(I). He also reported that he had headaches because he was not wearing his glasses, which were broken. Id. at ¶ 3(J). Defendant Hendricks offered to order new glasses for plaintiff, but plaintiff wanted his mother to order the glasses. Id. at ¶ 3(J).

In January 2009, plaintiff reported light sensitivity. Id. at ¶ 3(L). In March 2009, defendant Duncan examined plaintiff and found no medical reason for the reports of light sensitivity. Id. at ¶ 3(M). Defendant Duncan "considered suggesting or asking custody if the lights in Mr. Mills room could be covered." Id. On March 16, 2009, Attorney Young ordered sunglasses with a prescription lens for plaintiff. Complaint at 3.[5] On March 25, 2009, defendant Malim denied plaintiff the sunglasses. Malim Decl. at ¶ 21. The bases for the denial were that plaintiff did not have a prescription to wear sunglasses in the jail, wearing of sunglasses by jail inmates is against jail policy for security reasons, and the sunglasses purchased by Attorney Young had wide frames and could be ground down to a weapon. Id. On April 10, 2009,

---

[4] For purposes of this motion, all of the facts relevant to this claim are undisputed.

[5] Plaintiff's complaint is signed under penalty of perjury and may therefore be treated as an affidavit to the extent the statements therein are based on plaintiff's personal knowledge and admissible. See Schroeder v. MacDonald, 55 F.3d 454, 460 (9th Cir. 1995).

8

1  defendant Duncan issued made a request for plaintiff to be allowed to shade his lights "even
2  though there was no medically identifiable reason for the photophobia." Duncan Decl. at ¶ 3(O).
3          On April 22, 2009, plaintiff was treated with Motrin. On May 11, 2009,
4  defendant Hendricks informed defendant Malim that plaintiff had been evaluated by an
5  ophthalmologist, and that the ophthalmologist had neither diagnosed plaintiff with photophobia
6  nor prescribed sunglasses for plaintiff to wear in the jail. Malim Decl. at ¶ 24. In May 2009, a
7  trial of Midrin to control the headaches was started, but plaintiff reported that it did not help.
8  Duncan Decl. at ¶¶ 3(Q), ® (S). Other pain medications were prescribed. Id. at ¶ 3(T). After
9  plaintiff continued to complain, he saw a third consultant on July 27, 2009. Id. at ¶ 3(U). That
10 ophthalmologist gave him a prescription for tinted lenses, and defendant Malim thereafter
11 allowed plaintiff to wear prescription sunglasses. Id.; Malim Decl. at ¶ 16. Plaintiff was not
12 permitted to wear the sunglasses purchased by Attorney Young. Id.

     B. <u>Legal Standards</u>

14         In order to prevail on his Eighth Amendment claim, plaintiff must prove that he
15 had a "serious medical need" and that defendants acted with "deliberate indifference" to that
16 need. <u>Estelle v. Gamble</u>, 429 U.S. 97, 105 (1976). A medical need is serious if "the failure to
17 treat a prisoner's condition could result in further significant injury or the 'unnecessary and
18 wanton infliction of pain'." <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir.1992) (quoting
19 <u>Estelle</u>, 429 U.S. at 104, 97 S.Ct. 285). Deliberate indifference is proved by evidence that a
20 prison official "knows of and disregards an excessive risk to inmate health or safety; the official
21 must both be aware of the facts from which the inference could be drawn that a substantial risk
22 of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 825, 837
23 (1994). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when
24 they deny, delay, or intentionally interfere with medical treatment." <u>Hallett v. Morgan</u>, 296 F.3d
25 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted).

Mere negligence is insufficient for Eighth Amendment liability. Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). In addition, "[a] difference of opinion between a physician and the prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)).

C. Application

This claim is based on the refusal of jail staff to allow plaintiff to wear the prescription sunglasses purchased by his attorney, Ms. Young. See Complaint at 3-4. The undisputed evidence shows that between March 2009 and July 2009, plaintiff was seen by three different medical professionals for his complaints of light sensitivity. The sunglasses were purchased by his attorney in March 2009. At that point, plaintiff did not have a medical diagnosis that supported a prescription. No medical profession prescribed tinted glasses until July 2009, at which point he was permitted to wear tinted glasses. Plaintiff's claim against defendants Duncan and Hendricks is based solely on a difference of opinion between plaintiff and these two medical professionals, which is insufficient for imposition of liability under the Eighth Amendment. These two defendants are entitled to summary judgment.

Defendant Malim is also entitled to summary judgment. The undisputed evidence shows that his decision to not to allow the sunglasses was based on the fact that plaintiff did not have a medical prescription for the glasses, and the fact that the particular glasses purchased by his attorney raised security concerns.

The court will not rule on defendant Vladesov's motion for summary judgment at this time. Plaintiff contends that defendant Vladesov refused to honor the chrono issued by defendant Duncan. Defendant Vladesov appeared in this action after all defendants had appeared and the motion for summary judgment had been filed and plaintiff's Rule 56(d) motion had been ruled on. The court finds that the parties should be permitted to conduct discovery on

/////

10

plaintiff's claim against defendant Vladesov prior to ruling on a motion for summary judgment by defendant Vladesov.

III. Pat-Down Search

Plaintiff's third claim is that defendant Deputy Glenwinkel subjected plaintiff to a sexually inappropriate pat down search. Defendant Glenwinkel seeks summary judgment on the grounds that she did not touch plaintiff inappropriately during the challenged pat-down search and that plaintiff "has a motive to fabricate his claim" against her. Defendants' Memorandum of Points and Authorities, at 9.

A. Facts

In support of the motion, defendants have presented defendant Glenwinkel's declaration, in which she "categorically den[ies] ever inappropriately patting-down plaintiff" or "touching plaintiff . . . in a sexual manner on November 13, 2008 or any other day." Declaration of Deputy Sasha Glenwinkel in Support of Motion for Summary Judgment, filed May 7, 2012 (Glenwinkel Decl.), at ¶¶ 3-4. Defendants have also presented evidence that Officer Roberts, who plaintiff alleges witnessed the inappropriate pat-down, did not work on November 13, 2008. Id. at ¶ 6; Declaration of Officer C. Roberts in Support of Motion for Summary Judgment, filed May 7, 2012 (Roberts Decl.), at ¶ 5. Defendant Glenwinkel also avers that she is

> trained to conduct pat-down searches and have conducted well over a thousand pat-down searches in the exact same way. I use the blade of my hand to apply pressure on the outside of an inmate's clothing. At no time does my hand ever go inside an inmate's clothing to touch an inmate's genitals. Therefore, if I conducted a pat-down search of plaintiff Mills on November 13, 2008 (there is no evidence that I even conducted a pat-down search of plaintiff Mills on this date), plaintiff Mills was fully clothed (orange pants) because he was returning from a non-contact visit with his attorney.

Glenwinkel Decl. at ¶ 8.

In opposition to the motion, plaintiff avers that "[o]n or about November 13, 2008, after a non-contact attorney visit, I was fondled by defendant Glenwinkel during a pat

11

down search. This search went way beyond a normal pat down search. I have been patted down many, many times by both female and male officers, but this search went beyond a normal pat down search." Mills Decl. at ¶ 14.

### B. Legal Standards

Prison inmates "retain a limited right to bodily privacy." Michenfelder v. Sumner, 860 F.2d 328, 333 (9th Cir. 1988). Consistent with that right, "cross-gender strip searches in the absence of an emergency violate an inmate's right under the Fourth Amendment to be free from unreasonable searches." Byrd v. Maricopa County Sheriff's Dept., 629 F.3d 1135, 1146 (9th Cir. 2011).

> Whether a search is reasonable under the Fourth Amendment requires a case-by-case "balancing of the need for the particular search against the invasion of personal rights that the search entails ..." Bell [v. Wolfish], 441 U.S. [520] at 559, 99 S.Ct. 1861 [(1979)]. The required factors for courts to consider include: (1) "the scope of the particular intrusion," (2) "the manner in which it is conducted," (3) "the justification for initiating it," and (4) "the place in which it is conducted." Id. (citations omitted).

Id. at 1141. The United States Court of Appeals for the Ninth Circuit has defined "pat-down searches as searches 'done briefly and while the inmates are fully clothed, and thus do not involve intimate contact with the inmates' bodies.'" Id. at 1142 (quoting Grummett v. Rushen, 779 F.2d 491, 496 (1985)).

### C. Application

Here, there is no dispute that plaintiff is male and defendant Glenwinkel is female, that if plaintiff was searched by defendant Glenwinkel he was fully clothed during the search, and that the search was a routine "pat-down" search. Plaintiff contends defendant Glenwinkel "fondled" him during the search; defendant Glenwinkel vigorously disputes this and contends no such inappropriate "search" ever happened. Applying the Bell factors, supra, this court must find that this dispute precludes summary judgment for defendant Glenwinkel. The undisputed facts establish that any such search would have been a routine pat-down search.

1 There would have been no justification for "fondling" plaintiff during a routine pat-down search.
2 A jury is required to resolve the factual dispute between the parties and defendants' motion for
3 summary judgment must therefore be denied as to this claim.

4 IV. Monitoring of Confidential Communications

5 Plaintiff's fifth claim is that jail staff improperly monitored his confidential
6 communications with his criminal defense attorney. Specifically, plaintiff claims that defendant
7 Malim refused to allow contact visits with plaintiff and his attorney so that they would be forced
8 to use phones in the non-contact rooms so that their conversations "could be easily monitored
9 and/or recorded." Complaint at 6. Plaintiff alleges that their conversations "appeared to be
10 monitored whenever Sergeant Vladesov was on duty . . . due to the numerous clicks and static"
11 they "both heard when using the telephones whenever he was on duty." Id.

12 Defendants seek summary judgment on this claim on the ground that the
13 limitation was imposed by defendant Malim because plaintiff and his attorney were involved in a
14 personal relationship, the only limitation imposed was that their visits had to occur in a non-
15 contact visiting room, and the limitation was imposed "based on concerns for the safety and
16 security of the jail." Defendants' Memorandum of Points and Authorities in Support of Motion
17 for Summary Judgment and/or Partial Summary Judgment, filed May 7, 2012, at 13. Defendants
18 also contend that plaintiff's conversations with his attorney could not be listened to or recorded
19 by defendant Vladesov or anyone else at the jail. Id. at 14.

20 A. Facts

21 On September 18, 2008, plaintiff was transferred from Pelican Bay State Prison to
22 the Placer County Jail (Jail) to appear at a child custody hearing. Declaration of Captain George
23 Malim in Support of Motion for Summary Judgment, filed May 7, 2012, at ¶ 4. Plaintiff was at
24 the jail from September 18, 2008 through August 12, 2009. Id. at ¶ 5. From September 18, 2008
25 through September 24, 2008, plaintiff had contact visits with Attorney Julia M. Young at the
26 /////

1    jail.[6]  Id. at ¶ 5.  Staff at the jail reported to defendant Malim that "immediately after a meeting
2    with Ms. Young in a contact visit room, plaintiff Mills was observed having an erection."  Id. at
3    ¶ 11.  It appeared to defendant Malim and other Jail staff "due to the frequency and duration of
4    visits with plaintiff . . . by Ms. Young that the meetings were not strictly attorney-client meetings
5    but personal in nature."  Id. at ¶ 12.  Therefore, "[t]o maintain security", defendant Malim
6    limited Ms. Young to non-contact visits with plaintiff.  Id. at ¶ 13.  Those visits took place "in a
7    room where glass separates the attorney and client and they communicate by using a telephone
8    that is not monitored or recorded and documents are passed via jail personnel or though a pass-
9    through."  Id. at ¶ 14.

10            Plaintiff avers that during the visits in the non-contact room he and his attorney
11   "would hear statics and clicks on the phone during our conversations."  Mills Decl. at ¶ 15; see
12   also Young Decl. at ¶ 29.[7]  They "always heard the statics and clicks whenever [defendant]
13   Vladesov was on duty."  Mills Decl. at ¶ 16; see also Young Decl. at ¶ 31.  Plaintiff's attorney
14   "had never heard these statics and clicks when speaking with any other client at the jail when
15   using the phones."  Young Decl. at ¶ 30.  On one occasion when another sergeant was on duty,
16   they "were placed in a non-contact room and we did not hear the static and clicks that we always
17   heard whenever Sergeant Vladesov was on duty."  Mills Decl. at ¶ 16; see also Young Decl. at ¶
18   32.  Plaintiff also avers that he remembers "one time when Joseph Hoffman, who was the DA on
19   [his] case, was in the control at the jail standing right next to Vladesov.  This was after a visit
20   with my attorney."  Id. at ¶ 17; see also Young Decl. at ¶ 33.
21   /////
22   /////

---

[6] Attorney Young is representing plaintiff in this action.

[7] Defendants object to these averments to the extent that each declarant has represented what the other heard.  To that extent the objections are sustained.  The statements considered by the court are limited to plaintiff's statement about what he heard and Ms. Young's statement about what she heard.

14

B. <u>Analysis</u>

The only dispute between the parties on this claim is whether the conversations between plaintiff and his attorney were monitored by jail staff once they were limited to non-contact visits. Assuming arguendo that the inference plaintiff draws from the "statics and clicks" on the phone is sufficient to give rise to a material dispute about whether their calls were monitored by jail staff, the claim must still fail. "'[M]ere government intrusion into the attorney-client relationship, although not condoned by the court, is not itself violative of the Sixth Amendment right to counsel. Rather, the right is only violated when the intrusion substantially prejudices the defendant.'" <u>U.S. v. Danielson</u>, 325 F.3d 1054, 1069 (9th Cir. 2003) (quoting <u>United States v. Irwin</u>, 612 F.2d 1182, 1186-87 (9th Cir. 1980)). Plaintiff has presented no evidence that he suffered any cognizable prejudice as a result of any alleged monitoring of attorney-client communications. For this reason, defendants Malim and Vladesov are entitled to summary judgment on this claim.

For all of the foregoing reasons, IT IS HEREBY ORDERED that:

1. The May 7, 2012 motion for summary judgment by defendants Glenwinkel, Malim, White, Williams, and Vladesov is granted as to plaintiff's claims against defendant Malim and denied as to plaintiff's claims against defendants Vladesov, Glenwinkel, White, and Williams.

2. The May 18, 2012 motion for summary judgment by defendants Duncan and Hendricks is granted.

3. Within thirty days from the date of this order the parties shall meet and confer and file a joint proposal for further scheduling in this matter, including:

    a. A deadline for completion of discovery on plaintiff's claim against defendants Vladesov; and

    b. A deadline for filing, as appropriate, a renewed motion for summary judgment on plaintiff's claim against defendant Vladesov.

c.  In addition, the parties shall include in the joint statement their respective positions as to whether discovery should be reopened as to plaintiff's claims against defendants Glenwinkel, White and William to permit the depositions of said defendants or for any other purpose.

DATED: March 28, 2013.

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

12
mill1852.msj